# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,       )
                                 )
                                 )
v.                                 )     **I.D. No. 1411003111**
                                 )
                                 )     **Cr.A.Nos. IN14-11-0961, etc.**
**KRISHAN D. DILLARD,**     )
                                 )
**Defendant.**     )

Submitted: October 5, 2018
Decided: January 4, 2019
Corrected: January 7, 2019

## ORDER DENYING MOTION FOR POST CONVICTION RELIEF

This 4th day of January, 2019, upon consideration of the Defendant Krishan D. Dillard's Motion for Postconviction Relief (D.I. 70), Dillard's amendment(s) to his application (D.I. 82 and 83), his trial/plea counsel's affidavits (D.I. 78, 90), the State's response to those submissions (D.I 86), Dillard's reply (D.I. 87), and the record in this matter, it appears to the Court that:

(1) In January 2015, a grand jury indicted Defendant Krishan D. Dillard for attempted murder first degree, assault first degree, two counts of home invasion, two counts of burglary second degree, three counts of reckless endangering first degree, endangering the welfare of a child, nine related

counts of possession of a deadly weapon during the commission of a felony, and possession of a deadly weapon by a person prohibited.[1]

(2)     These multiple offenses arose from an attack that occurred on November 6, 2014. Early that morning, Dillard illegally entered an "on-again, off-again" girlfriend's, J.B-J.,[2] apartment. He carried with him a box of blue latex medical gloves. He donned a pair and armed himself with a kitchen knife. Dillard then went to J.B-J.'s bedroom and attacked her while she slept. J.B-J. woke to see Dillard on top of her. Dillard first stabbed her in the stomach then sliced her throat. J.B-J.'s 17-year-old sister, M.S., was in an adjoining bedroom and was awoken by J.B-J.'s screams as J.B-J. struggled and fought off Dillard. Dillard continued stabbing and slashing. M.S. went to her sister's aid and Dillard turned his attention to her. After stabbing and slashing M.S., Dillard tucked the knife in his pocket and fled the apartment. As a result of Dillard's attack, J.B-J. underwent emergency surgical repair of her liver, pancreas, neck and shoulder; she lost her gall bladder; and she

---

[1]     D.I. 3.

[2]     The Court uses pseudonyms to refer to the victims here. *See* DEL. SUPR. CT. R. 7(d) (a trial court, lower appellate court, or the Supreme Court itself may deem certain matters to be of a sensitive nature, in which case the court may order the use of pseudonyms *sua sponte*). Delaware courts do so routinely when domestic violence and juvenile victims are involved. *See State v. Remedio*, 108 A.3d 326, 328 n.2 (Del. Super. Ct. Dec. 31, 2014).

suffered numerous other less serious injuries. M.S. was stabbed and slashed in the leg; her wounds required suturing.[3]

(3)     Both J.B-J. and M.S. positively identified Dillard as their attacker. He was arrested six days later in Maryland.[4]

(4)     At final case review, Dillard pleaded guilty to attempted murder first degree, assault second degree, reckless endangering first degree, and possession of a deadly weapon during the commission of a felony.[5] He did so in exchange for dismissal of the remaining charges in this indictment, dismissal of the charges from a second unrelated indictment,[6] and the State's favorable sentencing recommendation.[7]

---

[3]     *See* Indictment, *State v. Krishan D. Dillard*, I.D. No. 1411003111 (Del. Super. Ct. Jan. 20, 2015) (D.I. 3). *See also* Dkt. No. 1, *State v. Krishan D. Dillard*, I.D. No. 1411003111 (Del. Super. Ct. Nov. 20, 2014).

[4]     *See* Dkt. No. 1, *State v. Krishan D. Dillard*, I.D. No. 1411003111 (Del. Super. Ct. Nov. 20, 2014).

[5]     Plea Agreement and TIS Guilty Plea Form, *State v. Krishan D. Dillard*, I.D. No. 1411003111 (Del. Super. Ct. Nov. 18, 2015) (D.I. 24).

[6]     *Id.* (State agrees to enter a *nolle prosequi* as to all charges from Case No. 1408011976). *See also* Indictment, *State v. Krishan D. Dillard*, I.D. No. 1408011976 (Del. Super. Ct. Oct. 27, 2014) (charging Dillard with drug dealing and aggravated drug possession).

[7]     Plea Agreement, at 1 (setting forth the charges to be *nolle prossed*, providing that the State would seek habitual criminal sentencing for only the felony assault count, and providing also that "the State will cap its recommendation of unsuspended Level 5 time at 35 years."). Dillard faced life imprisonment for the attempted murder count alone had the State sought application of the then-extant provisions of the Habitual Criminal Act to that count. *See* DEL. CODE ANN. tit. 11, § 4214(a) (2014) (any person sentenced under then-existing § 4214(a) had to receive a minimum sentence of not less than the statutory

-3-

(5) Dillard's sentencing occurred several months later on July 22, 2016, after a pre-sentence investigative report was prepared. Dillard had earlier expressed a desire to withdraw his guilty plea.[8] After consultation with a second attorney, however, he decided not to challenge his guilty plea but to be sentenced under the terms of the plea.[9]

(6) Dillard was sentenced: (a) for attempted murder – to 25 years at Level V, suspended after he serves 20 years imprisonment, for five years at Level IV-DOC Discretion, suspended after he completes a six-month Level IV term, for one year of Level III supervision with certain conditions including domestic violence and mental health treatment; (b) for assault second degree – to eight years at Level V to served pursuant to 11 *Del. C.* § 4214(a); (c) for possession of a deadly weapon during the commission of a

---

maximum penalty otherwise provided for any fourth or subsequent Title 11 violent felony that formed the basis of the State's habitual criminal petition); *see also* DEL. CODE ANN. tit. 11, § 4214(b) (2014) (providing that a person who had been twice previously convicted of certain enumerated felonies and was thereafter convicted of another of those enumerated felonies could be declared a habitual criminal; any person sentenced under then-existing § 4214(b) had to receive a natural life sentence for the triggering felony (or felonies) that formed the basis of the State's habitual criminal petition).

[8] *See* Dkt. Nos. 36-42, *State v. Krishan D. Dillard*, I.D. No. 1411003111 (Del. Super. Ct.).

[9] *See* Dkt. Nos. 48-58, *State v. Krishan D. Dillard*, I.D. No. 1411003111 (Del. Super. Ct.).

felony – to five years at Level V; and (d) for reckless endangering – to five years at Level V suspended in its entirety for a concurrent probated term.[10]

(7)     Dillard filed no direct appeal from his conviction or sentence. But he earlier docketed an unsuccessful *pro se* motion under Superior Court Criminal Rule 35(b) requesting reduction of the 33-year unsuspended portion of his Level V term.[11]

(8)     Natalie S. Woloshin, Esquire, represented Dillard through all trial and plea proceedings in this Court.[12]

(9)     Dillard has now filed the instant timely motion for postconviction relief under Superior Court Criminal Rule 61.

(10)    Dillard suggests in his motion that his trial/plea counsel provided ineffective assistance because she allegedly:

> (a)     unduly pressured Dillard into accepting his guilty plea;
>
> (b)     provided improper advice regarding the entry of and potential withdrawal of that guilty plea;

---

[10]     Mod. Sent. Order, *State v. Krishan D. Dillard*, I.D. No. 1411003111 (Del. Super. Ct. Aug. 26, 2016) (D.I. 62). Dillard's sentencing order was modified on August 26, 2016, to reflect an earlier effective date as agreed upon by the parties; all other aspects of Dillard's sentence remained unchanged. *Id.* at 4.

[11]     *See* Def.'s Sent. Modification Mot., *State v. Krishan D. Dillard*, ID No. 1411003111 (Del. Super. Ct. Sept. 28, 2016) (D.I. 63); Order Denying Def.'s Sent. Modification Mot., *State v. Krishan D. Dillard*, ID No. 1411003111 (Del. Super. Ct. Jan. 3, 2017) (D.I. 66).

[12]     *See* Aff. of Natalie S. Woloshin, Esquire (D.I. 78).

(c)     provided deficient representation regarding sentencing by (i) failing to review his pre-sentence investigative report with him and correct errors he believed were contained therein; and (ii) failing to adequately address the applicability of the then-very-recent changes to Delaware's Habitual Criminal Act;[13] and

(d)     failed to file an appeal of his sentence to the Delaware Supreme Court, and to therein argue (i) that he was eligible for a reduced sentence under recent revisions to the Delaware Habitual Criminal Act[14] and (ii) "[a]bout the false victims [sic] report also the prosecutorial misconduct."[15]

Dillard also claims that the State engaged in prosecutorial misconduct and the Court abused its discretion when addressing the amended Habitual Criminal Act and its applicability to his sentencing.[16]

(11)    The Court entered an order to expand the record to include "any materials that respond to the specific [ineffective assistance of counsel] allegation relating to Ms. Woloshin's representation [of Dillard]."[17] The

---

[13]    Def's Mot. for Postconviction Relief (D.I. 70); Def's Mot. to Amend Postconviction Motion (D.I. 82 and 83); Def's Rply. to State's Resp. (D.I. 87).

[14]    Def's Mot. to Amend Postconviction Motion, at 1.

[15]    Def's Rply. to State's Resp, at 4.

[16]    Def's Mot. to Amend Postconviction Motion, at 1; Def's Rply. to State's Resp, at 4.

[17]    Order to Expand Record, *State v. Krishan D. Dillard*, ID No. 1411003111 (Del. Super. Ct. June 1, 2017) (D.I. 75).

Court denied Dillard's later request for appointment of counsel to pursue his Rule 61 motion.[18]

(12) An inmate claiming ineffective assistance of counsel must demonstrate that: (a) his defense counsel's representation fell below an objective standard of reasonableness, and (b) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.[19] When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a challenged guilty plea, an inmate must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[20] When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a sentencing hearing, an inmate must show that "there is a

---

[18] Order Denying Appointment of Counsel, *State v. Krishan D. Dillard*, ID No. 1411003111 (Del. Super. Ct. Aug. 8, 2017) (D.I. 77). (Dillard failed to demonstrate "that his is a substantial IAC claim . . . [n]or has he adequately pled *any* specific exceptional circumstances warranting the appointment of counsel").

[19] *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

[20] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *Sartin v. State*, 2014 WL 5392047, at *2 (Del. Oct. 21, 2014); *State v. Hackett*, 2005 WL 3060976, at *3 (Del. Super. Ct. Nov. 15, 2005).

reasonable probability that, but for the counsel's error, the result of [his] sentencing would have been different."[21]

(13) There is always a strong presumption that counsel's representation was reasonable.[22] Too, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[23] And an inmate must satisfy the proof requirements of both prongs to succeed in making an ineffective assistance of counsel claim. Failure to do so on either prong will doom the claim, and the Court need not address the other.[24]

(14) Dillard's is a timely postconviction relief motion under Superior Court Criminal Rule 61[25] to which there are no procedural bars.[26]

---

[21]     *Brawley v. State*, 1992 WL 353838, at *1 (Del. Oct. 7, 1992); *State v. Torres*, 2015 WL 5969686, at *11 (Del. Super. Ct. Oct. 2, 2015).

[22]     *See Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[23]     *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356).

[24]     *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").

[25]     *Jackson v. State*, 654 A.2d 829, 832-33 (Del. 1995) (period for filing motion for postconviction relief begins to run when direct appeal process is complete; for one who does not take a direct appeal, his conviction becomes "final" when his time for taking a direct appeal has expired.).

[26]     The Court notes here that Dillard's allegations of "prosecutorial misconduct" and "abuse of sentencing discretion" are not, as he pleads them, stand-alone claims. If they were, those claims would likely be subject to Rule 61's procedural bars. *See, e.g.,* SUPER. CT. CRIM. R. 61(i)(3) (procedural default bar). But those averments are so intertwined with

(15) Dillard's first two claims—that Ms. Woloshin allowed him to enter into a guilty plea under duress, coerced him into abandoning his efforts to withdraw that plea, and that, but for Ms. Woloshin's errors, he would have never pleaded guilty—are belied by the record. During Dillard's plea colloquy, Ms. Woloshin represented that she spent a considerable amount of time with him during her representation, thoroughly reviewed the evidence in his several cases, discussed the charges and potential sentences with Dillard, vigorously negotiated the plea (including disposition of resulting violations of probation from Dillard's previous convictions), and assured that Dillard understood the consequences of accepting the State's plea offer.[27]

(16) Dillard, in a very detailed plea colloquy, confirmed under oath that: (a) he understood the charges to which he was pleading guilty; (b) he had committed those crimes; (c) he was waiving all trial rights; (d) he understood the sentencing provisions applicable in his case and his potential sentencing exposure; and (e) Ms. Woloshin had explained the plea forms, discussed with him the evidence in his case, and reviewed with him any

Dillard's ineffective assistance complaints that they are best addressed via the prejudice analysis thereunder.

[27] Plea Colloquy Tr., *State v. Dillard*, ID No. 1411003111 (Del. Super. Ct. Nov. 18, 2015), at 4-9. (D.I. 43).

-9-

possible defenses.[28] He denied that he needed to consult further with Ms. Woloshin before the Court accepted his plea.[29] And when asked whether he was satisfied with Ms. Woloshin's representation, Dillard replied, "I believe Ms. Woloshin has done a great job for me and I appreciate it."[30]

(17) More than a month after Dillard entered his plea, he filed a *pro se* application to withdraw it.[31] Having consulted extensively with both Ms. Woloshin and a second attorney,[32] Dillard decided to abandon that effort and move forward with sentencing.[33] Dillard again appeared before the Court and personally confirmed that he did not want to withdraw the plea. He explained that his decision was made after much reflection and after having

---

[28]     *Id.* at 9-22.

[29]     *Id.* at 22.

[30]     *Id.* at 22. Upon even further inquiry, Dillard confirmed that he was "fully satisfied" with the representation Ms. Woloshin had provided. *Id.*

[31]     D.I. 36. Because Dillard's allegations included complaints that Ms. Woloshin provided him ineffective assistance, she filed an obligatory motion to withdraw as counsel. D.I. 39. Given the very favorable terms of the plea entered and the compelling record of Ms. Woloshin's adequate representation, action on both requests was withheld until Dillard had the opportunity to consult with separate counsel on his options and the consequences of plea withdrawal. D.I. 40; Status Conf. Tr., *State v. Dillard*, ID No. 1411003111 (Del. Super. Ct. Feb. 12, 2016) (D.I. 42).

[32]     *See* D.I. 49-52.

[33]     D.I. 53.

obtained advice from separate counsel.[34] When asked if he needed any further explanation of the status of his plea and pending sentencing, Dillard said, "No. The only thing I would like to say, I appreciate the opportunity to reevaluate in this situation. And I just want to thank you and the court as well for giving me this opportunity."[35]

(18) Put simply, there is nothing to suggest duress or coercion in Dillard's proceedings. There being no clear and convincing contrary evidence, Dillard is bound by his answers recorded on the guilty plea forms and given during his colloquies both when entering the plea and when abandoning his efforts to withdraw it.[36]

(19) The record of the court proceedings is amply supported by that now developed on postconviction. Contrary to Dillard's contentions, the evidence demonstrates that Ms. Woloshin—through her own efforts, those of a retained private investigator, and with a retained mitigation specialist—fully investigated and considered alibi, mental health and other defenses.[37]

---

[34] Hearing Tr., *State v. Dillard*, ID No. 1411003111 (Del. Super. Ct. June 9, 2016), at 9-11. (D.I. 89)

[35] *Id.* at 14-15.

[36] *See Somerville v. State*, 703 A.2d 629, 632 (Del. 1997); *Smith v. State*, 1996 WL 21050 (Del. Jan. 5, 1996).

[37] Def. Counsel's Aff., at 2.

Ms. Woloshin met with Dillard regularly pre-trial, engaged him in multiple discussions of the evidence, and reviewed with him numerous potential defenses.[38] Ms. Woloshin traveled to Maryland to develop defense/mitigation strategies with Dillard's family members and identify potential defense witnesses.[39] Ms. Woloshin also explored whether—as Dillard had expressed and hoped—certain State's witnesses would be uncooperative and unavailable for trial.[40] Lastly, while preparing for a potential trial, Ms. Woloshin negotiated a plea that, while not wholly to Dillard's liking, was, in both her and Dillard's opinions, "his best option."[41] Lastly, Ms. Woloshin thoroughly explained and even visually charted out Dillard's sentencing exposure.[42]

(20) Ms. Woloshin only mentioned the possibility of withdrawing as counsel when discussing the allegations Dillard made when he tried to withdraw his plea.[43] No doubt Dillard's complaints then might reasonably be seen as requiring exploration with new defense counsel. Far from being some

---

[38]    *Id.*

[39]    *Id.*

[40]    *Id.*

[41]    *Id.* at 3.

[42]    *Id.* at 2; *id.* Ex. A, at 1.

[43]    Def. Counsel's Aff., at 3.

coercive threat, Ms. Woloshin's explanation was consistent with the state of the proceedings and necessary for Dillard to make an intelligent choice to either pursue withdrawal of the favorable plea entered or move forward to sentencing with Ms. Woloshin representing him.

(21) A criminal defense attorney must provide truthful information and informed legal advice; not just mouth what her client may want to hear. Doing so is required; not objectively unreasonable.[44] It is instead precisely the professional behavior expected of Delaware counsel.[45] And on this basis alone – *i.e.*, failure to show that Ms. Woloshin's performance was in any way deficient – Dillard's claims seeking vacatur of his guilty plea must be denied.[46]

---

[44] *See Bultron v. State*, 897 A.2d 758, 763 (Del. 2006) ("While a defendant has a right to counsel, he does not have a right to counsel who will not disagree with him about how best to proceed with his case.").

[45] *State v. Colburn*, 2016 WL 3248222, at *3-4 (Del. Super. Ct. June 1, 2016), *aff'd*, 2016 WL 5845778 (Del. Oct. 5, 2016) (Court could not find counsel's actions unreasonable when she correctly explained legal landscape to client and followed her ethical obligations under both the plea entered and applicable law).

[46] *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."); *State v. McGlotten*, 2011 WL 987534, at *4 (Del. Super. Ct. Mar. 21, 2011) ("To restate the requirements of *Strickland*, a defendant must establish two things, not just one: that trial counsel's performance was deficient **and** that but for that deficiency, the outcome of the proceedings would have been different. If a defendant cannot establish both prongs, then the ineffective assistance of counsel claim fails.") (emphasis in original).

(22) But Dillard attacks his sentence also. As to his sentence, he first claims that: (a) his counsel gave poor advice on the "law and facts" relating to the application of the Habitual Criminal Act in his situation; (b) the State engaged in "prosecutorial misconduct" when it sought application of the Habitual Criminal Act to him; and (c) the Court abused its discretion in fashioning his sentence under the Habitual Criminal Act. All of these complaints stem from Dillard's misapprehension of which version of the Habitual Criminal Act, old or new, should be applied to his sentence and which version actually was applied to his sentence.

(23) Dillard committed his crimes in November of 2014. He entered his plea in November of 2015. And he was sentenced on July 22, 2016.

(24) Three days prior to Dillard's sentencing, substantive revisions to Delaware's Habitual Criminal Act were enacted.[47] So at Dillard's sentencing the parties and Court discussed the applicability of the then-brand-new habitual criminal sentencing provisions.[48] The parties and Court agreed to the application of the new provisions to the only conviction for which the State

---

[47] 80 DEL. LAWS Ch. 321 (eff. July 19, 2016).

[48] Sentencing Hrg. Tr., *State v. Dillard*, ID No. 1411003111 (Del. Super. Ct. July 22, 2016), at 3-6. (D.I. 85)

sought habitual criminal sentencing: the second degree assault count.[49] This benefitted Dillard by allowing Ms. Woloshin to argue that the Court could sentence him to as little as 21 years because the minimum sentence applicable to the felony assault conviction would be four instead of eight years.[50] Dillard is simply mistaken that benefit was one due him by law.

(25) The sentencing provisions in effect at the time that a criminal act is committed are those applied when imposing a sentence for that act.[51] And Delaware courts need apply intervening ameliorative changes to sentencing statutes only when the General Assembly expressly provides for their

---

[49] *Id.*

[50] *Compare* DEL. CODE ANN. tit. 11, § 4214(a) (2014) (any person sentenced under then-existing § 4214(a) had to receive a minimum sentence of not less than the statutory maximum penalty otherwise provided for any fourth or subsequent Title 11 violent felony that formed the basis of the State's habitual criminal petition); *with* DEL. CODE ANN. tit. 11, § 4214(b) (2016) (providing under revised habitual criminal sentencing provisions one who had been thrice previously convicted of felonies and is thereafter convicted of a Title 11 violent felony must receive a minimum sentence of not less than one-half the statutory maximum penalty otherwise provided for the triggering Title 11 violent felony that forms the basis of the State's habitual criminal petition). DEL. CODE ANN. tit. 11, §§ 612(d), 4201(c) and 4205(b)(4) (2014) (assault second degree was then, and is now, a class D violent felony with a statutory maximum of eight years imprisonment).

[51] *See Distefano v. Watson*, 566 A.2d 1, 5 (Del. 1989) (observing that "[a] law violates the *ex post facto* prohibition, when it "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed").

retroactive application.[52] Indeed then, Ms. Woloshin succeeded in having the State agree to and the Court consider sentencing parameters more favorable than contolling law required. Unfortunately for Dillard, the Court didn't find his felony assault to be one for which a minimum term should be imposed.[53] There is simply no evidence in the record that inadequate counsel, prosecutorial misconduct, or an abuse of discretion led to the imposition of eight years imprisonment for Dillard's knife attack on M.S., a "young woman who was doing nothing more [than] trying to save her sister's life."[54]

(26) Dillard claims other deficiencies by counsel—namely, failing to review his pre-sentence investigative report with him and correct errors he

---

[52]     *See Fountain v. State*, 139 A.3d 837, 842-43 (Del. 2016) (Statutory revisions allowing for concurrent sentences in some circumstances do not apply to defendants whose crimes occurred before those changes because General Assembly did not expressly provide for their retroactive application.); *State v. Ismaaeel*, 840 A.2d 644, 655 (Del. Super. Ct. 2004) (Noting when declining to apply statutory changes favorable to the defendant that were enacted while his prosecution was pending: "Just as the State will not surprise a defendant with greater punishment in an *ex post facto* fashion, neither should a defendant feign surprise about the penalties that accompanied his conduct at the time of offense."), *aff'd*, 2004 WL 1587040 (Del. July 9, 2004) (affirming "on the basis of and for the reasons set forth in [that] well-reasoned decision" of this Court). *See also Wicks v. State*, 559 A.2d 1194, 1196 (Del. 1989) (In the face of silence on the issue, there is no reason to believe the General Assembly would intend punishment to depend upon fortuitous circumstance of when a defendant was convicted and sentenced rather than when his crime was committed.).

[53]     Sentencing Hrg. Tr., at 34-35 (Court sets forth the specific aggravating factors it relies upon when exercising its discretion to sentence Dillard to eight years for the second degree assault).

[54]     *Id.*

-16-

believed were contained therein—caused the cumulative 33-year unsuspended imprisonment term of his sentence. But here again, the record supports neither a finding of deficient performance by counsel nor a finding that had Ms. Woloshin performed differently "there is a reasonable probability that . . . the result of [Dillard's] sentencing would have been different."[55]

(27) Ms. Woloshin's preparation for and advocacy at Dillard's sentencing were far from ineffective. First, Ms. Woloshin engaged a mitigation specialist who accompanied her to interview potential mitigation witnesses, gathered records and documentation, and prepared a mitigation report for Mr. Dillard's plea negotiations and sentencing.[56] This mitigation report was provided to and reviewed by the Court.[57] Second, when she recognized that Dillard's initial interview with the presentence officer did not reflect well on her client, Ms. Woloshin sought delay of the sentencing and arranged for a second meeting at which she assisted Dillard.[58] Third, before

---

[55] *Brawley v. State*, 1992 WL 353838, at *1 (Del. Oct. 7, 1992); *State v. Torres*, 2015 WL 5969686, at *11 (Del. Super. Ct. Oct. 2, 2015).

[56] Def. Counsel's Aff., at 2.

[57] Sentencing Hrg. Tr., at 20.

[58] Def. Counsel's Aff., at 3; Hearing Tr. (June 9, 2016), at 4-6 (Ms. Woloshin requesting and obtaining Court permission for a second presentence interview); Sentencing Hrg. Tr., at 26 (noting Ms. Woloshin attended Dillard's presentence interview).

-17-

his sentencing hearing, Ms. Woloshin reviewed with Dillard the Court's initial and final presentence reports, the defense's own mitigation report and the State's sentencing memorandum.[59] Fourth, Ms. Woloshin specifically addressed those areas of disagreement she found with the Court's report and the State's recitation of aggravators.[60] Fifth, it is clear from sentencing transcript that Ms. Woloshin had prepared Dillard for sentencing; including preparation for his allocution.[61] Last, Ms. Woloshin gave her own lengthy and impassioned sentencing presentation on Dillard's behalf seeking a sentence of the minimum required.[62] There is no doubt that Ms. Woloshin more than fulfilled the advisory and advocacy obligations expected of sentencing counsel.[63] Dillard fails to identify any concrete missteps by counsel or any additional steps necessary;[64] therefore, he has failed to plead

---

[59] Def. Counsel's Aff., at 3; Hearing Tr. (June 9, 2016), at 4-5 (Ms. Woloshin noting she had reviewed initial presentence report with Dillard while his motion to withdraw his guilty plea was pending). *E.g.*, Sentencing Hrg. Tr., at 29 (Dillard referring to his employment history from presentence report).

[60] *E.g.*, Sentencing Hrg. Tr., at 25-26.

[61] *E.g.*, Sentencing Hrg. Tr., at 27-33 (Dillard's allocution).

[62] Sentencing Hrg. Tr., at 20-27.

[63] *Cf. Harden v. State*, 180 A.3d 1037 (Del 2018).

[64] *See Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)) (stating that for ineffective assistance of counsel claims, defendant must demonstrate "but for counsel's errors, the result of the proceeding would have been different").

prejudice with any particularity.[65] In fact, Dillard has made no real effort to demonstrate there is a reasonable probability that the result of his sentencing would have been different.[66] His ineffective assistance at sentencing claim must, therefore, be denied.

(28) Dillard's last claim is that Ms. Woloshin failed to file a direct appeal raising the sentencing issues addressed and rejected above.[67] Dillard never requested that Ms. Woloshin file an appeal on his behalf and Ms. Woloshin, for good reason, was unable to identify any potential issues for direct appeal.[68]

(29) As the Delaware Supreme Court has observed, "counsel is constitutionally required to 'consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivilous grounds for appeal), or

---

[65] *See Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)) (stating "failure to state with particularity the nature of the prejudice experienced is fatal to a claim of ineffective assistance of counsel").

[66] *Brawley v. State*, 1992 WL 353838, at *1 (Del. Oct. 7, 1992); *State v. Torres,* 2015 WL 5969686, at *11 (Del. Super. Ct. Oct. 2, 2015).

[67] Def's Mot. to Amend Postconviction Motion, at 1; Def's Rply. to State's Resp, at 4.

[68] Supp. Aff. of Natalie S. Woloshin, Esquire (D.I. 78).

(2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'"[69] Here there is reason to think neither.

(30) "[T]he difficulty of succeeding" on an ineffectiveness claim for failure to file an appeal is well-recognized where "the defendant pled guilty to the charges, as 'a guilty plea reduces the scope of potentially appealable issues and . . . a [guilty] plea may indicate that the defendant seeks an end to judicial proceedings.'"[70] And when, as here, the only appellate claims that a defendant posits are those related to his sentence after a guilty plea, the bar is even higher because of the very limited appellate review of sentences. In Delaware, "[a]ppellate review of a sentence is limited to whether the sentence is within the statutory limits prescribed by the General Assembly and whether it is based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind."[71]

(31) The record demonstrates that the Court considered all and only relevant evidence, including Dillard's mitigating evidence, when it crafted its sentence. And Dillard puts forth only conclusory allegations of "false victims

---

[69] *Burkett v. State*, 2007 WL 2123778, at *2 (Del. July 25, 2007) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)).

[70] *Id.*

[71] *Weston v. State*, 832 A.2d 742, 746 (Del. 2003) (citing *Siple v. State*, 701 A.2d 79, 83 (Del. 1997); *Mayes v. State*, 604 A.2d 839, 842-43 (Del. 1992)).

[sic] report" and "prosecutorial misconduct" that are unsupported by that record.[72] Thus, Ms. Woloshin can hardly be seen to have acted in an objectively unreasonable way when she neither recommended nor filed a notice of appeal of Dillard's sentence.

(32) Dillard also fails to demonstrate that a direct appeal would have yielded a result different than the unsuccessful motion for reduction of sentence that he had earlier pursued.[73] And so the Court can also find no prejudice from Ms. Woloshin's failure to file a direct appeal.[74]

(33) Krishan D. Dillard has failed in meeting his burden of demonstrating: that Ms. Woloshin's representation fell below an objective standard of reasonableness; that, but for her alleged errors, he would not have pleaded guilty and instead proceeded to trial; that, but for her alleged errors, he would have received a more favorable sentence; or, that, but for her alleged

---

[72] Def's Mot. to Amend Postconviction Motion, at 1; Def's Rply. to State's Resp, at 4.

[73] *See* n.11, *supra.*

[74] *Pinkston v. State,* 2014 WL 1657769, at *4 (Del. Apr. 22, 2014).

errors, he would have successfully attacked his sentence on appeal.

Accordingly, Dillard's Motion for Postconviction Relief must be **DENIED.**

**SO ORDERED** this 4th day of January, 2019.

_____

**Paul R. Wallace, Judge**

Original to Prothonotary

cc:  Renee L. Hrivnak, Deputy Attorney General
Natalie S. Woloshin, Esquire
Patrick J. Collins, Esquire
Mr. Krishan D. Dillard, *pro se*
Investigative Services Office