# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
    )
    )
v.     )    **ID. Nos. 1707015283 and 1712012199**
    )
    )    **Cr. A. Nos. IN17-08-0408, etc.**
DAMION THOMAS,     )
    )
    **Defendant.** )

Submitted: September 16, 2019
Decided: October 31, 2019
Corrected: November 4, 2019

## MEMORANDUM OPINION AND ORDER

*Upon Defendant Damion Thomas's Motion for Sentence Modification,*
**DENIED**.

Jordan A. Braunsberg, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

Damion Thomas, *pro se.*

**WALLACE, J.**

Before the Court is Defendant Damion Thomas's motion for sentence reduction or modification. Thomas, who is serving mandatory terms of incarceration for attempted first degree robbery and possession of a firearm during the commission of a felony, asks the Court to alter his sentence so that he will serve those terms concurrently instead of consecutively.[1] For the reasons stated below, Thomas's application is **DENIED**.

## I.  FACTUAL[2] AND PROCEDURAL BACKGROUND

In May 2017, a young man finished his shift and left his job at a New Castle hoagie shop. When he was just a short distance from work, that young man was approached by Thomas who trained a handgun on him and ordered, "give me all your s—t!" When the victim didn't respond immediately to that demand, Thomas hit him in the head with the butt of the gun. The victim fell to the ground. While he was down, Thomas rifled through the victim's pockets and Thomas's compatriot struck the victim again with the butt of a handgun—this time, in the face. Both Thomas and his partner fled when a samaritan interceded. But the police traced a cell phone the two had left behind, so Thomas was eventually identified and charged.

---

[1]    Def.'s Mot. to Modify Sent., at 2-3 (D.I. 22; D.I. 15).

[2]    The factual background of Thomas's crimes is derived from the collected presentence materials and the parties' filings related to this motion. (D.I. 11, 22, and 24; D.I. 11, 15, and 17).

On a mid-July afternoon in 2017, another young man pulled into the parking lot of a New Castle apartment complex to complete a pre-arranged deal to buy marijuana and opioids from Thomas. Once this young man parked, Thomas hopped in the car's rear driver's seat behind him; Thomas's cohort got into the front passenger seat. They demanded the young man hand over his cash. He refused. So Thomas pepper-sprayed him while Thomas's accomplice clubbed the victim with what was believed to be a handgun. The victim reacted by putting the car in gear and driving off erratically. Thomas and his partner bailed out and fled.

These two attacks yielded two separate indictments that included: one count each of Robbery First Degree, Assault First Degree, Possession of a Deadly Weapon by a Person Prohibited, and Possession of a Firearm by a Person Prohibited; and, two counts each of Attempted Robbery First Degree, Assault Second Degree, Conspiracy Second Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Possession of a Deadly Weapon During the Commission of a Felony (PFDCF).[3] These charges were resolved by two separate agreements through which Thomas pleaded guilty to one count each of Robbery

—————————

[3]      Indictment, *State v. Damion Thomas*, ID No. 1707015283 (Del. Super. Ct. Oct. 2, 2017) (D.I. 4); Indictment, *State v. Damion Thomas*, ID No. 1712012199 (Del. Super. Ct. Jan. 2, 2018) (D.I. 1).

Second Degree (as a lesser offense), PFDCF, Attempted Robbery First Degree, Assault Second Degree, and Conspiracy Second Degree.[4]

Thomas's sentencing for both matters occurred in September 2018, a few months after his second plea was entered and a combined comprehensive pre-sentence investigative report was prepared. Thomas was sentenced to a total period of forty-three years of incarceration, to be suspended for community supervision after serving six years in prison.[5] Those six years of imprisonment are the sum of two separate three-year minimum mandatory terms of incarceration imposed for the attempted first degree robbery count and for the PFDCF count.[6] Each of those terms was statutorily required and could not be suspended in any part.[7] And under the law extant at the time of Thomas's crimes, guilty pleas, and sentencing, those two terms could not be made to run concurrently.[8]

---

[4] Plea Agreement and TIS Guilty Plea Form, *State v. Damion Thomas*, ID No. 1707015283 (Del. Super. Ct. Feb. 12, 2018) (D.I. 11); Plea Agreement and TIS Guilty Plea Form, *State v. Damion Thomas*, ID No. 1712012199 (Del. Super. Ct. Jan. 2, 2018) (D.I. 11).

[5] Sentencing Order, *State v. Damion Thomas*, ID Nos. 1707015283 and 1712012199 (Del. Super. Ct. Sept. 7, 2018) (D.I. 20; D.I. 13).

[6] *Id.* at 1-2, 4.

[7] DEL. CODE ANN. tit. 11, § 832(b) & (c) (2016) (One convicted of attempted robbery first degree must receive a minimum sentence of at least three years of incarceration.); *id.* at tit. 11, § 1447A(b) (One convicted of PFDCF must receive a minimum sentence of at least three years of incarceration.); *id.* at tit. 11, § 4204(d) (A court is prohibited from substituting probation or other suspension for any portion of a prison sentence that is, by statute, "a mandatory sentence, a minimum sentence, a minimum mandatory sentence or a mandatory minimum sentence.").

[8] *See* DEL. CODE ANN. tit. 11, § 3901(d) (2016).

-4-

Thomas filed no direct appeal from his conviction or sentence. Instead, some ten months after his sentencing, he filed the present motion requesting sentence reduction—that is, that his prison term now be halved.[9]

## II. NEITHER SUPERIOR COURT CRIMINAL RULE 35(b) NOR "HOUSE BILL 5" PERMIT THE COURT TO MODIFY THOMAS'S SENTENCE TO ALLOW HIS TERMS OF IMPRISONMENT TO RUN CONCURRENTLY.

When addressing a sentence modification request, the Court must determine whether the procedural mechanism the inmate invokes is available in his circumstance.[10] Thomas asks the Court to modify or reduce his sentence by ordering that his two mandatory unsuspended consecutive three-year terms of imprisonment be served concurrently.

Like scores of other inmates seeking similar diminution of their pre-2019-imposed sentences over the last few months, Thomas incants "House Bill 5" in his petition. "House Bill 5" refers to the recent initiating legislation of the 150th General Assembly's Act that further expanded a Delaware sentencing judge's authority to

---

[9] Def.'s Mot. to Modify Sent. (D.I. 50).

[10] *State v. Tollis,* 126 A.3d 1117, 1119 (Del. Super. Ct. 2016). *See, e.g., State v. Culp,* 152 A.3d 141 (Del. 2016) (Delaware Supreme Court examines the several sources of authority trial court might have—but that were then inapplicable or unavailable—when trial court reduced sentence.); *see also State v. Redden,* 111 A.3d 602, 606 (Del. Super. Ct. 2015) (When considering requests for sentence modification, "this Court addresses any applicable procedural bars before turning to the merits.").

impose concurrent, rather than consecutive terms of confinement.[11] But just like those many other inmates, Thomas identifies no court rule, statute, or other procedural provision that would allow the Court to now revisit his sentence. For good reason—there is none.

### A. Superior Court Criminal Rule 35(b) is not available to incite review based on post-sentencing statutory changes.

Thomas does not specifically cite this Court's Criminal Rule 35(b) in his motion. Yet throughout his papers, he does specifically ask the Court to "modify or reduce" his sentence of imprisonment.[12] And, as a general matter, "[t]here is no separate procedure, other than that which is provided under Superior Court Criminal Rule 35, to reduce or modify a sentence."[13] But Rule 35(b) is not now, nor ever has been, an instrument for reexamination of previously imposed sentences in light of subsequent statutory changes.

The purpose of Superior Court Criminal Rule 35(b) is to provide a reasonable period for the Court to consider alteration of its sentencing judgment.[14] "The reason for such a rule is to give a sentencing judge a second chance to consider whether the

---

[11]   *See* Del. H.B. 5 § 1, 150th Gen. Assem., 82 DEL. LAWS ch. 66, § 1 (2019) (*amending* DEL. CODE ANN. tit. 11, § 3901(d)).

[12]   Def.'s Mot. to Modify Sent., at 2-3.

[13]   *Jones v. State*, 2003 WL 21210348, at *1 (Del. May 22, 2003).

[14]   *Redden*, 111 A.3d at 606.

initial sentence is appropriate."[15] And "[a] request for leniency and reexamination of the sentencing factors [extant when the original sentence was imposed are] precisely the stuff of which a proper and *timely* Rule 35(b) motion is made."[16]

An untimely Rule 35(b) application, on the other hand, is permitted only when an inmate demonstrates "extraordinary circumstances" for consideration.[17] The term "extraordinary circumstances" is generally defined as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event."[18] And for the purposes of Rule 35(b), "extraordinary circumstances" have been found only

---

[15]     *State v. Reed*, 2014 WL 7148921, at *2 (Del. Super. Ct. Dec. 16, 2014) (citing *United States v. Ellenbogen*, 390 F.2d 537, 541, 543 (2d Cir. 1968) (Explaining time limitation and purpose of then-extant sentence reduction provision of Federal Criminal Rule 35, the federal analogue to current Superior Court Criminal Rule 35(b).)); *United States v. Maynard*, 485 F.2d 247, 248 (9th Cir. 1973) (Rule 35 allows sentencing court "to decide if, on further reflection, the original sentence now seems unduly harsh" such request "is essentially a 'plea for leniency.'") (citations omitted). *See also State v. Tinsley*, 928 P.2d 1220, 1223 (Alaska Ct. App. 1996) (Explaining that under Alaska's like sentence-review rule, court's "authority can be exercised even when there is no reason to reduce the sentence other than the judge's decision to reconsider and show mercy.").

[16]     *State v. Remedio*, 108 A.3d 326, 331-32 (Del. Super. Ct. 2014) (emphasis in original).

[17]     *State v. Lewis*, 797 A.2d 1198, 1200-01 (Del. 2002); *State v. Diaz*, 2015 WL 1741768, at *2 (Del. Apr. 15, 2015) ("In order to uphold the finality of judgments, a heavy burden is placed on the defendant to prove extraordinary circumstances when a Rule 35 motion is filed outside of ninety days of the imposition of a sentence.").

[18]     *Diaz*, 2015 WL 1741768, at *2 (citing BLACK'S LAW DICTIONARY (10th ed. 2014)); *id.* (Observing also that, in the Rule 35(b) context, "'extraordinary circumstances' are those which 'specifically justify the delay;' are 'entirely beyond a petitioner's control;' and 'have prevented the applicant from seeking the remedy on a timely basis.'"); *Remedio*, 108 A.3d at 332.

"when an offender faces some genuinely compelling change in circumstances that makes a resentencing urgent."[19]

In short, Rule 35(b) is a rule limited to reconsideration and altering of a sentence either upon: (1) immediate reexamination of factors individual to the moving inmate and his or her particular case; or (2) later consideration only when there is a truly compelling change in that inmate's individual circumstances that presents an urgent need for revision of the sentence's terms.[20] It is not some contrivance allowing review of any existing sentencing judgment because of any favorable change in statutory sentencing law occurring after an inmate's sentence was imposed and based on some systemic shifting of principles or policies not specific to the inmate seeking relief.[21] That type of sentence review—if and when available—is governed by statutes and rules carefully tailored to its precise

---

[19]    *Fountain v. State*, 139 A.3d 837, 842 n.20 (Del. 2016).

[20]    *Remedio*, 108 A.3d at 331-32; *Fountain*, 139 A.3d at 842 n.20.

[21]    *Lewis*, 797 A.2d at 1204 (Commenting on limited nature of Rule 35 and noting that it is obviously not meant to "leave open any sentence for reconsideration indefinitely."); *Tollis*, 126 A.3d at 1120 (Observing Rule 35(b) is one "permitting a certain restrained level of discretion" for review after the initial period permitted by the rule.).

purpose.[22]    Rule 35(b) is certainly "no vehicle" to engage when seeking such

sentence relief.[23]

> **B.    "House Bill 5"—the most recent amendment of § 3901(d) granting Delaware judges greater  discretion to impose concurrent terms of imprisonment for certain crimes—does not apply retroactively to sentences imposed before June 25, 2019, the effective date of the amendment.**

Section 3901 of the Delaware Criminal Code provides for the fixing of terms

of imprisonment.    For almost forty years, § 3901(d) read: "No sentence of

confinement of any criminal defendant by any court of this State shall be made to

run concurrently with any other sentence of confinement imposed on such criminal

defendant."[24]    The first lifting of this complete ban on concurrent terms of

incarceration came in July 2014 when the General Assembly amended § 3901(d) to

provide:

> The court shall direct whether the sentence of confinement of any criminal defendant by any court of this State shall be made to run concurrently or consecutively with any other sentence of confinement imposed on such criminal defendant.

---

[22]    *E.g.*, Del. Super. Ct. Spec. R. 2017-1 (Governing requests for modification of sentence filed by inmates sentenced under pre-2016 version of the Habitual Criminal Act; such rule expressly required by DEL. CODE ANN. tit. 11, § 4214(f) (2016).); *and* Del. Super. Ct. Crim. R. 35A (Governing requests for modification of sentence for an offense committed by a juvenile seeking exercise of the court's retained jurisdiction to modify that sentence granted by DEL. CODE ANN. tit. 11, § 4204 (2013).).

[23]    *Fountain*, 139 A.3d at 842; *id.* at 842 n.20.

[24]    DEL. CODE ANN. tit. 11, § 3901(d) (1977) (as amended by enactment of 61 DEL. LAWS ch. 158 (1977)).

> Notwithstanding the foregoing, no sentence of confinement of any criminal defendant by any court of this State shall be made to run concurrently with any other sentence of confinement imposed on such criminal defendant for any conviction of [certain enumerated] crimes.[25]

Among those certain enumerated crimes were Robbery First Degree and PFDCF.[26] Thomas was sentenced under that 2014 Amended Sentencing Act version of § 3901(d) in September 2018.

Thereafter, on June 25, 2019, the General Assembly further expanded Delaware sentencing judges' discretion to order concurrent terms of incarceration.[27] It did so by striking a handful of crimes from the 2014 Amended Sentencing Act's list of those for which concurrent sentencing is prohibited.[28] Robbery First Degree (and therefore any attempted first degree robbery) was one of the crimes struck from that 2014 Amended Sentencing Act list.[29]

Thomas—like so many inmates did five years ago upon passage of the 2014 Amended Sentencing Act—asks the Court to revisit his sentence, apply the 2019

---

[25]   79 DEL. LAWS ch. 297 (2014) (*amending* DEL. CODE ANN. tit. 11, § 3901(d)) (hereinafter "2014 Amended Sentencing Act").

[26]   *Id.*

[27]   82 DEL. LAWS ch. 66, § 1 (2019) (*further amending* DEL. CODE ANN. tit. 11, § 3901(d)) (hereinafter "2019 Amended Sentencing Act").

[28]   *Id.*

[29]   *Id.*

Amended Sentencing Act changes, and reduce his incarcerative term by half. But just as this Court and our Supreme Court consistently held when examining those earlier 2014 changes to § 3901(d),[30] these 2019 amendments cannot be applied retroactively.

The Delaware Supreme Court's decision in *Fountain v. State*[31] is both instructive and controlling here. In *Fountain*, the *en banc* Court first thoroughly examined and explained Delaware's general rule of prospectivity (and its possible exceptions).[32] Then, more importantly here, the Court went on to point out that any retroactive application of a sentencing change to those already serving a sentence would "have a large effect on segments of the public, law enforcement and defense resources, and the judiciary itself.[33] And, as a consequence, before retroactively applying any such statutory sentencing change, a Court must be sure that the

---

[30]   *State v. Jennings*, 2014 WL 3943089 (Del. Super. Ct. Aug. 11, 2014) (then-recently amended § 3901(d) provisions could not be applied retroactively); *State v. Coverdale*, 2014 WL 4243631 (Del. Super. Ct. Aug. 13, 2014) (same); *State v. Perkins*, 2014 WL 4179882 (Del. Super. Ct. Aug. 21, 2014) (same); *State v. Priest*, 2014 WL 5003419 (Del. Super. Ct. Oct. 6, 2014) (same); *State v. Love*, 2015 WL 1058972 (Del. Super. Ct. Mar. 6, 2015); *Fountain*, 139 A.3d at 842-43 ([T]he [2014] Amended Sentencing Act applies only prospectively"; "the General Assembly would have spoken specifically if it intended the Amended Sentencing Act to operate retroactively.").

[31]   139 A.3d 837 (Del. 2016).

[32]   *Id.* at 841-42.

[33]   *Id.* at 843.

enacting legislation "provide[s] for retroactivity explicitly and . . . include[s] special procedures to address its retrospective application."[34]

The General Assembly's non-retroactive intent is even clearer with the 2019 Amended Sentencing Act. For the General Assembly is presumed to have known—when it further amended § 3901(d) to allow greater discretion to concurrently sentence—of these judicial decisions on the retroactivity of such amendments.[35] In the face of that clear, existing, and recent case law, the General Assembly then would have—if it wanted review and modifications for sentenced inmates—provided for new § 3901(d)'s retroactivity explicitly and included special procedures to address its retrospective application. The General Assembly did not. And this Court cannot in its stead.[36]

### C. Even if the current version of § 3901(d) were available to Thomas, his sentence could not be reduced.

Even if they could be applied retroactively to Thomas's sentence, the recent 2019 changes to § 3901(d) are of no assistance to him. It is the cumulation of

---

[34]     *Id.*

[35]     *State v. Cooper*, 575 A.2d 1074, 1076-77 (Del. 1990); *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 239 n.13 (Del. 1982); *Husband v. Wife*, 367 A.2d 636, 637 (Del. 1976).

[36]     *Evans v. State*, 212 A.3d 308, 314 (Del. Super. Ct. 2019) (Court is not free to interpret or add to statutes to obtain what a party claims "would be a more 'workable' result or sound public policy.").

Thomas's separate three-year attempted first degree robbery and PFDCF terms that require him to serve at least six years.

If sentenced under current § 3901(d), the Court would, as a general matter, have the discretion to order Thomas's attempted robbery term be served concurrently.[37] But still, as a matter of law, Thomas's sentence for PFDCF cannot be ordered to run concurrently with *any* other sentence of confinement because Thomas "used" or "displayed" a handgun during his robbery of the hoagie shop worker.[38]

While Thomas seems to believe otherwise, perforce, "*no* sentence of confinement of any criminal defendant by any court" can be made to run concurrently with *any* concurrent-sentence-prohibited crime's term. In other words, it simply doesn't matter whether both or all crimes in the equation are concurrent-sentence-prohibited or not. As long as one crime in the calculation is concurrent-sentence-prohibited, it cannot be made to run concurrently with *any* other.

So, even if available to him, any changes to § 3901(d) wrought by the 2019 Amended Sentencing Act would make no substantive difference in Thomas's case.

---

[37] DEL. CODE ANN. tit. 11, § 3901(d) (2019).

[38] *See id.*

Because, while his attempted robbery sentence would be concurrent-eligible, Thomas's PFDCF sentence is not.

## III. CONCLUSION

Thomas is not asking the Court to take a timely second look at his sentence and reconsider its harshness in light of the sentencing factors extant when it was first imposed. Nor is he asking for the Court to now consider some genuinely compelling change in his individual circumstances that makes a resentencing urgent. Hence, resort to Criminal Rule 35(b) is wholly unavailable to him.

Thomas is asking for the retroactive application of the 2019 Amended Sentencing Act—a sentencing reform provision enacted while he was already in prison serving his sentence. But the General Assembly neither provided for such retroactivity explicitly nor included special procedures to address its retrospective application. Thus, application of the 2019 Amended Sentencing Act is prohibited.

And lastly, even if the Court could retroactively apply the provisions of the 2019 Amended Sentencing Act, it could not order any other term of incarceration to run concurrently with his ineligible PFDCF sentence.

In turn, Thomas's motion for sentence modification must be **DENIED**.

**IT IS SO ORDERED**.

**Paul R. Wallace, Judge**

-14-