# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY


| | | |
|---|---|---|
| **STATE OF DELAWARE**, | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **ID. No. 1301004925** |
| | ) | |
| | ) | |
| **DANIEL R. REMEDIO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Submitted: October 6, 2014
Decided: December 31, 2014


## OPINION AND ORDER


*Upon Defendant, Daniel R. Remedio's, Motion for Sentence Modification*,
**DENIED**.



Zoe Plerhoples, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

Michael W. Modica, Esquire, Wilmington, Delaware, for Defendant Daniel R. Remedio.



**WALLACE, J.**

## I.   INTRODUCTION

Before the Court is Defendant Daniel R. Remedio's ("Remedio") motion for sentence modification.  Remedio, who is serving an aggregate five-year term of incarceration for domestic assault with a weapon and related offenses, asks the Court to reduce the length of his imprisonment.  For the reasons stated below, Remedio's application is **DENIED**.

## II.   FACTUAL[1] AND PROCEDURAL BACKGROUND

The record reflects that, on January 7, 2013, Remedio was arrested for multiple offenses related to: an assault on his wife during which he struck her in the head with a bottle; the menacing of his wife, step-daughter and step-granddaughter with a large knife; and other acts of threatening and endangering of the three.

The trouble began on January 6, 2013.  Remedio had been drinking most of that day and night while picking arguments with his wife, ER,[2] regarding her adult

---

[1]  This factual recitation is derived from the Court's thorough review of the parties' filings in the instant sentence reduction proceeding, the reports and court documents generated during the investigation and prosecution of Remedio's crimes, the forensic and other mental health records produced in this matter, the Court's presentence file, and the complete sentencing record and transcript – all of which the parties have referenced liberally in their several filings.

[2]  The Court uses pseudonyms to refer to all three victims here. *See* Del. Supr. Ct. R. 7(d) (a trial court, lower appellate court, or the Supreme Court itself may deem certain matters to be of a sensitive nature, in which case the court may order the use of pseudonyms *sua sponte*). Delaware courts do so routinely when juvenile victims are involved. *E.g.*, *Ashley v. State*, 85 A.3d 81 (Del. 2014); *Gordon v. State*, 2013 WL 6569705 (Del. Dec. 11, 2013); *State v. McCollough*, 2012 WL 4321286 (Del. Super. Ct. Sept. 18, 2012).

daughter, EA. At one point, Remedio locked ER out of the house. When she attempted to get in using a spare key, Remedio assaulted her, causing ER to fall backwards down some steps and to hit her head on concrete. ER was able to gather herself and get back inside. This time, Remedio struck her on the side of her head with an empty wine bottle. The bottle caused a severe laceration which later had to be closed with several staples.

After striking ER, Remedio grabbed a large kitchen knife and threatened to kill her nine-year-old granddaughter, EC. Remedio went to EC's bedroom, where he was intercepted by EA. The fracas ensuing between the three adults moved back to the kitchen/dining area. There Remedio shattered furniture, threatened his wife with the knife, punched EA in the face, and kicked EA in the head as she tried to shield ER from further harm. The child, EC, witnessed all of this and fled to the basement to call 911.

As police officers pulled up to the house shortly thereafter, ER and EA fled out the front and screamed to them for help. The front of ER's nightgown was covered in her own blood. She was visibly frightened and upset. Remedio, who had retreated to the home's garage, was immediately taken into custody and charged with various offenses.

A grand jury later indicted Remedio for two counts of Assault in the Second Degree, three counts of Aggravated Menacing, four counts of Possession of a

Deadly Weapon During the Commission of a Felony ("PDWDCF"), three counts of Terroristic Threatening, one count of Endangering the Welfare of a Child, and one count of Offensive Touching.[3] Represented by counsel, Remedio entered into a plea agreement with the State in which he pleaded guilty to one count each of Assault in the Second Degree, Aggravated Menacing, and PDWDCF in exchange for dismissal of the remaining charges and a favorable sentence recommendation (eight years). And on February 14, 2014, the Court sentenced him to: five years at Level V, suspended after two years, for the second degree assault charge; three years at Level V, suspended after one year, for the aggravated menacing charge; and two years at Level V for the PDWDCF charge.[4] Both at the sentencing hearing and in its sentencing order, the Court noted the following aggravators: the excessive cruelty displayed during the offenses; the vulnerability of the child victim; and the defendant's lack of remorse in relation to these offenses.[5]

---

[3]  DEL. CODE ANN. tit. 11, § 612 (2013); § 602(b); § 1447; § 621; § 1102(a)(4); § 601.

[4]  DEL. CODE ANN. tit. 11, §§ 612(d) & 4205(b)(4) (2013) (assault second degree is a class D felony for which one may be sentenced up to eight years at Level V); §§ 602(b) & 4205(b)(5) (aggravated menacing is a class E felony for which one may be sentenced up to five years at Level V); §§ 1447(a) & 4205(b)(2) (PDWDCF is a class B felony for which one must be sentenced to serve not less than 2 years and may be sentenced up to 25 years at Level V).

[5]  Sent. Tr. at 17 (D.I. 39); Sent. Order, *State v. Daniel R. Remedio*, ID No. 1301004925 (Del. Super. Ct. Feb. 14, 2014) (D.I. 34). *See* DEL. CODE ANN. tit. 11, § 4204 (n) (2013) (when sentencing court exceeds SENTAC guidelines, it should place on the record its reasons for the enhanced sentence); DEL. SUPR. CT. ADMIN. DIR. 76 (1987) (same).

Remedio filed no direct appeal from his convictions or sentence. Yet, on June 2, 2014 (or 108 days after he was sentenced), through new counsel, he filed the present motion requesting reduction of his term of imprisonment.[6]

## III. DISCUSSION

When addressing a sentence reduction application, the Court must first identify the specific procedural mechanism the inmate attempts to invoke; it must then determine whether that mechanism is available under the circumstances. Remedio "moves this court for modification of [his] sentence . . . pursuant to [Superior Court] Criminal Rule 35(b)."[7] But within that motion he also incants this Court's "inherent authority to consider a sentence modification."[8] Remedio seems to recognize that there are two distinct sources of authority under which the Court may modify a sentence: its statutory authority and its inherent authority.[9] But Remedio neither addresses nor meets the requirements for the Court's exercise of either.

---

[6]     Def.'s. Mot. to Modify Sent. (D.I. 36).

[7]     Def.'s Mot. to Modify Sent., at 1.

[8]     *Id.* at 2.

[9]     *State v. Sloman*, 886 A.2d 1257, 1265 (Del. 2005); *State v. Johnson*, 2006 WL 3872849, at *3 (Del. Super. Ct. Dec. 7, 2006).

**A. Remedio Cannot Invoke the Court's "Inherent Authority" to Modify a Sentence Because the Court Did Not Reserve Such Authority in His Case.**

A sentencing judge has the "inherent authority [independent of mechanisms provided for by court rule or statute] to modify [its] initial sentence based on the terms of the original sentence itself."[10] But the circumstances under which this authority is exercised are rare, and the requirements for such must be adhered to strictly. It is not a ready path for circumnavigating this Court's procedural rules governing sentence reduction – i.e., "to consider a sentence modification that would otherwise be untimely under Superior Court Criminal Rule 35(b)."[11] When the Court has retained authority over its sentencing judgment, and acts thereunder, "Rule 35(b) is not implicated at all."[12] But the exercise of that authority is exceptional,[13] not routine. This policy protects the integrity of the Court's rules and the finality of its sentencing judgments.[14]

---

[10]     *Sloman*, 886 A.2d at 1265; *Johnson*, 2006 WL 3872849, at *3 (quoting *Sloman*).

[11]     Def.'s Mot. to Modify Sent., at 2.

[12]     *Sloman*, 886 A.2d at 1265; *Johnson*, 2006 WL 3872849, at *3 (quoting *Sloman*).

[13]     The Court uses the word "exceptional" with purpose here. As explained below, it is only when the Court expressly, affirmatively, and timely excepts an individual sentencing judgment from the rules, that it may later exercise its reserved authority to act without implicating the sentencing reduction provisions and bars provided in the Court's rules of criminal procedure.

[14]     *See Sloman*, 886 A.2d at 1265 (Criminal Rule 35(b) "normally operates as a check on a sentencing judge's inherent authority to modify a sentence"); *Johnson*, 2006 WL 3872849, at *3 (purpose and structure of sentence reduction rules "is to uphold the finality of sentences"). *See also* ABA STANDARDS FOR CRIMINAL JUSTICE: SENTENCING §18-7.1 (3d ed. 1994) (providing

Delaware law defining the contours of this "inherent authority" elucidates its obligatory criteria. A sentencing judge must reserve the authority to modify a sentence: (1) upon the occurrence of a certain condition or conditions;[15] (2) "expressly and affirmatively";[16] (3) either in the original sentencing order[17] *or* upon a first and timely filed Rule 35(b) motion;[18] and (4) solely to ensure that the primary goal of the original sentence is preserved.[19]

Only such a sentencing judgment allows the Court – in fact, requires the Court[20] – to consider the merits of a sentence modification request under its

---

that it is "[t]he rules of procedure [that] should authorize a sentencing court, upon motion . . . to reduce the severity of any sentence," and that those "rules should restrict the time for reduction in severity of a sentence to a specified period after imposition of a sentence").

[15]  *See Sloman*, 886 A.2d at 1265 ("where a judge, in his sentencing Order, reserves that authority to modify a sentence upon the occurrence of certain conditions, Rule 35(b) is not implicated at all"). *See, e.g.*, *Layton v. State*, 2006 WL 1223121, at *1 (Del. Apr. 24, 2006) (court expressly reserved authority to modify upon successful completion of specific drug program); *Jones v. State*, 2006 WL 3054633 (Del. Oct. 17, 2006) (same).

[16]  *Johnson*, 2006 WL 3872849, at *3.

[17]  *Sloman*, 886 A.2d at 1265.

[18]  *State v. Walls*, 2006 WL 2950491, at *2 (Del. Oct. 17, 2006); *Johnson*, 2006 WL 3872849, at *3.

[19]  *Sloman*, 886 A.2d at 1265; *Johnson*, 2006 WL 3872849, at *3.

[20]  *E.g.*, *Layton*, 2006 WL 1223121, at *1 ("Given the Superior Court's explicit retention of jurisdiction over Layton's sentence, we agree that it was an abuse of discretion for the Superior Court not to consider the merits of Layton's first motion for a sentence modification."); *Jones*, 2006 WL 3054633, at *1 (trial court erred in applying Rule 35(b) procedural bars when its original sentencing order expressly reserved authority to consider modification upon specific occurrence). *Cf. Francis v. State*, 2006 WL 4459527 (Del. Dec. 22, 2006) (when this Court, in its original sentencing order, expressly invokes its inherent authority to retain jurisdiction to a modify a sentence upon an occurrence, it must consider a sentence modification request upon

inherent authority. Remedio's does not. And so, absent a reservation of authority provision in the original sentencing order (or disposition of an original and timely filed Rule 35(b) motion) that meets the now well-accepted and established criteria, "the only grounds for a sentence modification [for Remedio] would be either Rule 35(b) or 11 *Del. C.* § 4217."[21]

**B. Remedio Can Only Obtain Relief If He Demonstrates Extraordinary Circumstances Exist that Excuse His Untimely Rule 35(b) Motion.**

The purpose of Superior Court Criminal Rule 35(b) historically has been to provide a reasonable period for the Court to consider alteration of its sentencing judgments.[22] Where a motion for reduction of sentence of imprisonment is filed within 90 days of sentencing, the Court has broad discretion to decide if it should alter its judgment.[23] "The reason for such a rule is to give a sentencing judge a second chance to consider whether the initial sentence is appropriate."[24]

---

that occurrence, but retains its sound discretion to grant or deny the modification then-requested).

[21] *Sloman*, 886 A.2d at 1265; *Jones v. State*, 2003 WL 21210348, at *1 (Del. May 22, 2003) ("There is no separate procedure, other than that which is provided under Superior Court Criminal Rule 35, to reduce or modify a sentence.").

[22] *Johnson v. State*, 234 A.2d 447, 448 (Del. 1967) (per curiam).

[23] *Hewett v. State*, 2014 WL 5020251, at *1 (Del. Oct. 7, 2014) ("When, as here, a motion for reduction of sentence is filed within ninety days of sentencing, the Superior Court has broad discretion to decide whether to alter its judgment.").

[24] *State v. Reed*, 2014 WL 7148921, at *2 (Del. Super. Ct. Dec. 16, 2014) (citing *United States v. Ellenbogen*, 390 F.2d 537, 541, 543 (2d Cir. 1968) (explaining time limitation and

In his sentence reduction motion, Remedio requests that the Court reweigh mitigating circumstances he believes were present at the time of his sentencing and reduce his term of imprisonment.[25] The mitigating factors he identifies are: (1) his remorse for his actions which he alleges the Court did not properly take into consideration at the time of his sentencing; and (2) his "significant physical and mental health issues."[26] A request for leniency and reexamination of the sentencing factors is precisely the stuff of which a proper and *timely* Rule 35(b) motion is made.[27] But Remedio's is not timely.

Rule 35(b) requires that an application to reduce imprisonment be filed promptly[28] – i.e. within 90 days of the sentence's imposition – "otherwise, the

---

purpose of then-extant sentence reduction provision of Federal Criminal Rule 35, the federal analogue to current Superior Court Criminal Rule 35(b)); *United States v. Maynard*, 485 F.2d 247, 248 (9th Cir. 1973) (Rule 35 allows sentencing court "to decide if, on further reflection, the original sentence now seems unduly harsh" such request "is essentially a 'plea for leniency.'") (citations omitted); *State v. Tinsley*, 928 P.2d 1220, 1223 (Alaska Ct. App. 1996) (explaining under Alaska's then-extant120-day rule court's "authority can be exercised even when there is no reason to reduce the sentence other than the judge's decision to reconsider and show mercy")).

[25]  Def.'s Mot. to Modify Sent., at 1-2, 5.

[26]  *Id*. at 2.

[27]  *See supra* note 24.

[28]  *See, e.g.*, R.I. Super. Ct. R. Crim. P. 35, historical note (1972) (noting such a provision is "intended to provide the court with an opportunity during a limited period after sentencing to exercise leniency in the event the court, for some reason, determines that the sentence imposed was unduly severe or a shorter sentence would be desirable").

Court loses jurisdiction" to act thereon.[29]   An exception to this bar exists:   to overcome the 90-day time limitation, an inmate seeking to reduce a sentence of imprisonment on his or her own motion must demonstrate "extraordinary circumstances."[30]   Recognizing his untimeliness, Remedio tries to cast his identified "mitigating factors" as "extraordinary circumstances."[31]   A heavy burden is placed on the defendant to establish extraordinary circumstances in order to "uphold the finality of sentences."[32]   "Extraordinary circumstances" excusing an untimely Rule 35(b) motion were best described by former Chief Justice (then-Justice) Steele as those which "*specifically justify the delay*;" are "entirely beyond a petitioner's control;" and "have prevented the applicant from seeking the remedy on a timely basis."[33]

---

[29]   *In re Nichols*, 2004 WL 1790142, at *1 (Del. Super. Ct. July 20, 2004); *State v. Lewis*, 797 A.2d 1198, 1205 (Del. 2002) (Steele, J., dissenting) ("after 90 days . . . the judiciary may not consider [an inmate's plea for leniency] except where 'extraordinary circumstances' may have prevented the applicant from seeking the remedy on a timely basis").  *See, e.g.*, *Tinsley*, 928 P.2d at 1223-24 (the time limit exists so that trial court does not have nearly boundless continuing authority to reduce a defendant's sentence); *State v. Jensen*, 429 N.W.2d 445, 446-47 (N.D. 1988) (120-day time limitation is jurisdictional).

[30]   *Sample v. State*, 2012 WL 193761, at *1 (Del. Jan. 23, 2012) ("Under Rule 35(b), the Superior Court *only* has discretion to reduce a sentence upon motion made within 90 days of the imposition of sentence, *unless* 'extraordinary circumstances' are shown.") (emphasis added).

[31]   Def.'s Mot. to Modify Sent., at 1.

[32]   *Johnson*, 2006 WL 3872849, at *3.

[33]   *Lewis*, 797 A.2d at 1203, 1205 (emphasis in original).

-10-

Remedio does not suggest that the Court was unaware of his statement that he "wished [the incident] never happened" to a mental health evaluator. He lifts that statement directly from the forensic and other mental health records produced for sentencing. And there is no doubt that Remedio proclaimed he was remorseful at the sentencing hearing.[34] The same is true of the medical and mental health issues he now outlines in his motion. Those were all included in the records produced before, the investigative report generated for, and the defense presented at Remedio's sentencing hearing.[35] Instead, he claims that the Court should have ascribed greater weight to these "mitigating factors" and imposed a shorter incarcerative term. Any request that is merely an entreaty to go back and reweigh factors the Court was aware of at the original sentencing is manifestly barred by Rule 35(b)'s 90-day time limit.[36]

---

[34]     Sent. Tr. at 12.

[35]     *See, e.g.*, *id.* at 10-11.

[36]     *State v. Wynn*, 2013 WL 4493622, at *2 (Del. Super. Ct. Aug. 20, 2013) ("A request to reweigh factors already known to the court falls squarely within this procedural bar."); *State v. Wilson*, 2006 WL 1291369, at *3 n.20 (Del. Super. Ct. May 9, 2006) ("No extraordinary circumstances exist here that would remove the 90 day time requirement. . . . this claim could have been brought by [inmate] the day after he was sentenced.").

In turn, Remedio has failed to establish the existence of extraordinary circumstances that would allow consideration of his untimely motion, and it must be denied on that basis alone.[37]

## IV.   CONCLUSION

Because no extraordinary circumstances exist, Remedio's Rule 35(b) motion is procedurally barred and must[38] be **DENIED**.

**IT IS SO ORDERED.**

/s/ Paul R. Wallace
Paul R. Wallace, Judge

Original to Prothonotary
cc:  Investigative Services Office

---

[37]    *State v. Reed*, 2014 WL 7148921, at *3 ("Addressing the merits of a case that does not meet procedural requirements effectively renders our procedural rules meaningless."); *Lewis*, 797 A.2d at 1205 ("When this Court removes the thoughtful, rational time bar Superior Court has written into its rule, we force the Superior Court to consider each Rule 35(b) petition on the merits of every extraordinary circumstance that might be alleged, demand that an inordinate amount of our scarce judicial resources be devoted to this purpose, unnecessarily usurp well founded Constitutional principles codifying executive clemency, and foster widely disparate exercises of discretion that may well result in inconsistent, irreconcilable outcomes.") (emphasis in original).

[38]    As this Court recently observed, consideration of whether an inmate can avoid Rule 35(b)'s time bar sometimes requires a more thorough examination of the *substance* of a specific claimed "extraordinary circumstance." *Reed*, 2014 WL 7148921, at *3. Just so here. Remedio's claim required an exhaustive comparison of his present filings and the complete sentencing record to determine whether his claimed "extraordinary circumstances" were matters known to and considered by the Court in his original sentencing. After that painstaking review, the Court finds its original sentencing judgment is appropriate for all the reasons stated at the time it was rendered. Thus, even if it were not constrained by Rule 35(b)'s "extraordinary circumstances" standard, the Court would not be inclined to modify its original sentence.