# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| **v.** | ) | **ID Nos. 1906016226 and 1907021368** |
| | ) | **Cr. A. Nos. IN19-07-0323W, etc.** |
| **THOMAS A. SMITH,** | ) | |
| **Defendant.** | ) | |

Submitted: December 4, 2020
Decided: February 8, 2021

## ORDER DENYING MOTION TO REDUCE SENTENCE

**(1)** This 8th day of February, 2021, upon consideration of the Defendant Thomas A. Smith's Motion for Sentence Reduction (D.I. 38),[1] his several amendments and supplements to that motion (D.I. 40, 42, 44, 47, and 49), the State's Response (D.I. 48), and the record in this matter, it appears to the Court that:

**(2)** On October 31, 2019, Thomas A. Smith pleaded guilty to one count of vehicular homicide in the second degree, one count of vehicular assault in the second degree, two separate counts of driving under the influence of drugs, and one count of felony non-compliance with bond

---

[1] Mr. Smith has docketed duplicates of each filing related to his Rule 35(b) application in each of these related cases. To avoid confusion, unless otherwise indicated, the Court references herein only the docket number entries in Case No. 1906016226.

conditions.[2] He did so in exchange for the State's downgrading or dismissing of certain charges and the State's capping of its sentencing recommendation to a request for four years of unsuspended imprisonment.[3]

**(3)** These offenses arose from two separate criminal episodes:

**THE DECEMBER 2018 VEHICULAR HOMICIDE AND ASSAULT**—The first occurred on a Tuesday morning in late December 2018. Shortly before 11:00 a.m., Mr. Smith was driving an SUV on I-95 and approaching a construction zone. In the passenger seat was his girlfriend, Julianne Peters. Three construction vehicles were parked on the right shoulder of the highway. Suddenly, Mr. Smith drifted to the right and out of the travel lane. He collided with the three construction vehicles and then struck Andrew Filer, a construction worker, before coming to a stop. Ms. Peters died almost instantly from the impact; Mr. Filer suffered multiple fractures and other injuries.

When Mr. Smith was taken to the hospital for treatment, he denied consuming any controlled substances before driving and, instead, complained that Ms. Peters was being stubborn and had made him drive even though he

---

[2] Plea Agreement and TIS Guilty Plea Form, *State v. Thomas A. Smith,* ID Nos. 1906016226 and 1907021368 (Del. Super. Ct. Oct. 31, 2019) (D.I. 26).

[3] *Id.*

was tired.  A blood test later revealed, though, that Mr. Smith was driving while under the influence of fentanyl.[4]

After the complete accident and forensic investigation, Mr. Smith was indicted for Ms. Peters' death and Mr. Filer's assault.[5]  He was arrested on July 26, 2019.  He was arraigned and had bail set that same day by a Commissioner of this Court.  And Mr. Smith made bail later that same afternoon.  One of the Commissioner's conditions of that bail was that, should he be released, Mr. Smith was prohibited from driving and prohibited from consuming alcohol or any illicit substances while pending trial.

**THE JULY 2019 DUI AND NON-COMPLIANCE CHARGES**—On July 31, 2019—five days after being arrested for and bailing out on the vehicular homicide and assault charges—Mr. Smith was again arrested for mixing cars and drugs.  At around 9:00 a.m. that Wednesday morning, Newark police were called to a fast food restaurant's parking lot to check on an unconscious man behind the wheel of a car.  There they found the car running and in reverse

---

[4]  And a records check revealed that Mr. Smith was driving that day with a revoked license.

[5]  Indictment and Rule 9 Warrant, *State v. Thomas A. Smith,* ID No. 1906016226 (Del. Super. Ct. July 28, 2019) (D.I. 1) (charging Mr. Smith with one count of vehicular homicide in the second degree, one count of vehicular assault in the first degree, one count of driving under the influence of drugs, driving with a suspended or revoked license, and two other related traffic charges).

with Mr. Smith slumped over in the driver's seat. On his lap were orange needle caps and blue wax paper folds. Mr. Smith appeared confused when the officers instructed him several times to shift the car into park. The police also noticed that Mr. Smith was trying to hide a needle between his legs as they spoke to him. He had pinpoint pupils, slurred speech, and admitted to the police that he had earlier consumed three bags of heroin. Lab testing of Mr. Smith's blood sample revealed the presence of methadone, diazepam, and fentanyl.

For this incident, Mr. Smith was charged in this Court by criminal information with felony non-compliance with bond and another driving under the influence of drugs count.[6]

**(4)** As mentioned earlier, Mr. Smith entered his guilty plea in late October 2019. His sentencing occurred on January 10, 2020, after a comprehensive presentence investigative report was prepared. He was sentenced: (a) for Vehicular Homicide Second Degree (N19-07-0323W)—Eight years at Level V suspended after serving three years at Level V for five years at Level IV (DOC Discretion), suspended after serving six months at Level IV, for two years at Level III (TASC); (b) for Vehicular Assault Second

---

[6] Criminal Information, *State v. Thomas A. Smith,* ID No. 1907021368 (Del. Super. Ct. Oct. 22, 2019) (D.I. 3).

Degree (N19-07-0324W)—Nine months at Level V with no probation to follow; (c) for Non-compliance With Bond-Felony (N19-08-0307I)—Three months at Level V with no probation to follow; (d) for Driving Under the Influence of Drugs (N19-07-0325W)—One year at Level V suspended in whole for one year at Level III (TASC); and (e) for Driving Under the Influence of Drugs (N19-08-0311I)—One year at Level V suspended in whole for one year at Level III (TASC).[7]

**(5)** His sentencing order provides that Mr. Smith's sentence is effective October 31, 2019 (with credit for seven days previously served), that each Level V term is to be served consecutively, that each unsuspended term of imprisonment is to be served under the provisions of 11 *Del. C.* § 4204(k),[8] that and that he is to be held at Level V until space is available for his Level IV placement.[9]

---

[7] Sentence Order, *State v. Thomas A. Smith,* ID Nos. 1906016226 and 1907021368 (Del. Super. Ct. July 10, 2020) (D.I. 12). There are numerous financial, no-contact, evaluation and treatment terms and conditions included as part of Mr. Smith's sentence. But as they are of not challenged in his motion, they are not fully recounted here.

[8] DEL. CODE ANN. tit. 11, § 4204(k)(1) (2018) ("[T]he court may direct as a condition to a sentence of imprisonment to be served at Level V . . . that all or a specified portion of said sentence shall be served without benefit of any form of early release, good time, furlough, work release, supervised custody or any other form of reduction or diminution of sentence.").

[9] D.I. 12.

**(6)** In short, Mr. Smith's four-year period of unsuspended imprisonment is comprised of the one-year minimum term of incarceration that must be imposed under Delaware's vehicular homicide statute and that cannot be suspended[10] and an additional three years the Court imposed as an exercise of its own sentencing judgment.

**(7)** Mr. Smith filed no direct appeal of his convictions or sentences. Instead, he docketed the present motion (with its many amendments and supplements) under Superior Court Criminal Rule 35(b) requesting reduction of his four-year prison term.[11] Mr. Smith asks the Court reduce his sentence by one, the other, or all of the following means: (a) removal of § 4204(k)'s application to the unsuspended portions of his several prison terms; (b) an order that all of his terms of imprisonment run concurrently; and (c) an order that all remaining imprisonment be suspended once he has completed the minimum one-year term required and a Level V substance abuse program."[12]

---

[10] DEL. CODE ANN. tit. 11, § 630(b) (2018).

[11] Super. Ct. Crim. R. 35(b) (providing that, under certain conditions, the court may reduce a sentence of imprisonment on an inmate's motion); *Jones v. State*, 2003 WL 21210348, at *1 (Del. May 22, 2003) ("There is no separate procedure, other than that which is provided under Superior Court Criminal Rule 35, to reduce or modify a sentence.").

[12] D. I. 38; D.I. 42; D.I. 47.

**(8)** The Court may consider Mr. Smith's motion "without presentation, hearing or argument."[13] The Court will decide his motion on the papers filed and the complete sentencing record in this case.

**(9)** When considering motions for sentence reduction, "this Court addresses any applicable procedural bars before turning to the merits."[14] As Mr. Smith's motion is his first and is timely filed, the Court finds there are no procedural bars to the consideration of his request under Rule 35(b).

**(10)** The purpose of Superior Court Criminal Rule 35(b) historically has been to provide a reasonable period for the Court to consider alteration of its sentencing judgments.[15] Where a motion for reduction of sentence of imprisonment is filed within 90 days of sentencing, the Court has broad discretion to decide if it should alter its judgment.[16] "The reason for such a rule is to give a sentencing judge a second chance to consider whether the initial sentence is appropriate."[17] But, no doubt, as movant, Mr. Smith must

---

[13] Super. Ct. Crim. R. 35(b).

[14] *State v. Redden*, 111 A.3d 602, 606 (Del. Super. Ct. 2015).

[15] *Johnson v. State*, 234 A.2d 447, 448 (Del. 1967) (per curiam).

[16] *Hewett v. State*, 2014 WL 5020251, at *1 (Del. Oct. 7, 2014) ("When, as here, a motion for reduction of sentence is filed within ninety days of sentencing, the Superior Court has broad discretion to decide whether to alter its judgment.").

[17] *State v. Remedio*, 108 A.3d 326, 331 (Del. Super. Ct. 2014) (internal citations and quotations omitted) (Observing that such a request is essentially a plea for leniency: an appeal to the sentencing court to reconsider and show mercy.). *See also State v. Tinsley*,

shoulder the burden of establishing just cause for reduction or modification of his otherwise legal sentence.[18]

**(11)** The Court has examined Mr. Smith's claim—*i.e.*, his request that the Court reconsider and decide if, on further reflection, its sentence now seems unduly harsh—on the merits. Under every iteration of Delaware's criminal rules governing motions to reduce sentences, such entreaties are addressed to the sound discretion of this Court.[19]

**(12)** Mr. Smith cites several reasons that the Court should reduce his sentence to no more than the minimum mandatory plus that needed to complete a substance abuse program: (a) his acceptance of responsibility demonstrated by his guilty plea; (b) his successful completion of the minimum mandatory one-year term; (c) his substance abuse and mental health issues

928 P.2d 1220, 1223 (Alaska Ct. App. 1996) (Explaining under Alaska's then-extant 120-day rule, that a court's "authority can be exercised even when there is no reason to reduce the sentence other than the judge's decision to reconsider and show mercy.").

[18] *See State v. Joseph,* 2018 WL 1895697, at *1 (Del. Super. Ct. Apr. 11, 2018) ("The burden is upon the movant to establish cause to modify a lawfully imposed sentence.").

[19] *Hewett*, 2014 WL 5020251, at *1. *See also Shy v. State*, 246 A.2d 926 (Del. 1968); *Lewis v. State*, 1997 WL 123585, at *1 (Del. Mar. 5, 1997).

that he is willing to address through treatment at Level V; (d) the COVID-19 pandemic and his worry about it;[20] and (e) his deep and abiding remorse.[21]

**(13)** At bottom in this sentence reduction motion, Mr. Smith asks that the Court reweigh mitigating circumstances he believes were present at the time of his sentencing and then reduce his term of imprisonment. "A request for leniency and reexamination of the sentencing factors is precisely the stuff of which a proper and *timely* Rule 35(b) motion is made."[22]

---

[20] While the Delaware Courts share great concern over the ongoing pandemic and its known and potential effects, we uniformly afford little weight to inmates' generalized invocation of COVID-19 as a factor toward sentence reduction under Rule 35(b). *See, e.g., Hernanez-Vargas v. State,* 2020 WL 5951372, at *2 (Del. Oct. 7, 2020) ("[T]he decision of whether the early release of low-risk offenders would lessen the dangers posed by COVID-19 to the general prison population is best left to the discretion of the Department of Corrections, which may move for the modification of any prisoner's sentence for good cause under 11 *Del. C.* § 4217."); *State v. Palmer*, 2020 WL 3971387, at *2 (Del. Super. Ct. July 10, 2020) ("[S]imple invocation of the COVID-19 pandemic, the omnipresent societal anxiety accompanying that health crisis, and the thoughts of certain advocacy groups as to how government officials and prisons should address it are simply inadequate to shoulder the heavy burden placed on one to establish 'extraordinary circumstances' under Rule 35(b)."); *State v. Colburn*, 2020 WL 3832560, at *2 (Del. Super. Ct. July 8, 2020) (mere incantation of COVID-19 and suggestions of prison overcrowding, unsafe housing conditions, and lack of social distancing did not establish "extraordinary circumstances" under Rule 35(b)); *State v. Roberts*, 2020 WL 3063957, at *2 (Del. Super. Ct. June 8, 2020) ("generalized suggestion" of inmate's "underlying (but unidentified) health conditions" and "his statement of anxiety" over COVID-19 do not establish "extraordinary circumstances" under Rule 35(b)); *State v. Bednash*, 2020 WL 2917305, at *2 (Del. Super. Ct. June 3, 2020) (finding inmate's summary allegations of his medical conditions and vulnerability to COVID-19 do not establish "extraordinary circumstances" warranting a reduction or modification of his sentence under Rule 35(b)); *State v. Baker*, 2020 WL 2789703, at *1 (Del. Super. Ct. May 29, 2020) (inmate's mere suggestion of "his potential exposure to COVID-19 . . . has not set forth facts establishing 'extraordinary circumstances'"). Just so here.

[21] D. I. 38; D.I. 42; D.I. 47; D.I. 49.

[22] *Remedio*, 108 A.3d at 331-32 (emphasis in original).

**(14)** The Court in no way doubts now—nor has it ever doubted—the sincerity of Mr. Smith's remorse for killing his girlfriend and orphaning her nine-year-old son. And the Court commends Mr. Smith for the strides he has made during the Level V term of this sentence, as well as, his expressed desire to seek further treatment for the issues he now recognizes have caused him great difficulty, Ms. Peters her life, and Ms. Peters' family incredible heartache. But these mitigators pale in comparison to the aggravating circumstances present in this case that include: the specifics of Mr. Smith's crime and its horrific permanent effect; Mr. Smith's repetitive criminal conduct over the last 15 years; and Mr. Smith's flouting of the Court's express orders and processes that was demonstrated here.

**(15)** That said, the Court has fully reviewed Mr. Smith's application, the record of his case, his prior criminal and supervision history, and all sentencing information available. The Court carefully weighed the applicable aggravators and mitigators before imposing its sentence. The Court finds that when those and all other sentencing factors in his case are reconsidered, Mr. Smith's statements of regret may be commendable and his desire to truly engage treatment admirable, but they do not warrant a sentence reduction here. Instead, after a thorough review of the merits of Mr. Smith's request,

the Court finds its original sentencing judgment is appropriate for the reasons stated at the time it was rendered.

(16)    Accordingly, the Court will exercise its discretion under Rule 35(b)[23] and **DENY** Mr. Smith's request to reduce his four-year term of imprisonment.

**SO ORDERED this 8th day of February, 2021.**

**Paul R. Wallace, Judge**

Original to Prothonotary

cc:    Mr. Thomas A. Smith, *pro se*
Erik C. Towne, Deputy Attorney General
Kevin P. Tray, Esquire
Investigative Services Office

---

[23]    *Rondon v. State*, 2008 WL 187964, at *1 (Del. Jan. 15, 2008) ("The merit of a sentence modification under Rule 35(b) is directed to the sound discretion of the Superior Court.").