# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| **v.** | ) | **ID Nos. 1905004486** |
| | ) | **Cr. A. Nos. IN19-06-0415, etc.** |
| **JEFFREY C. GUSEMAN,** | ) | |
| **Defendant.** | ) | |

Submitted:  December 11, 2020
Decided:  March 10, 2021

## ORDER DENYING MOTION TO REDUCE SENTENCE

**(1)** This 10th day of March, 2021, upon consideration of the Defendant Jeffrey C. Guseman's Motion for Sentence Reduction (D.I. 21), his supplement to that motion (D.I. 25), the State's Response (D.I. 26), and the record in this matter, it appears to the Court that:

**(2)** On November 4, 2019, Jeffrey C. Guseman pleaded guilty to two counts of manslaughter and one count of assault second degree (as a lesser offense of assault in the first degree).[1] He did so in exchange for the State's downgrading of the felony-assault count, dismissing of certain traffic-related charges, and capping of its sentencing recommendation to 15 years of

---

[1] Plea Agreement and TIS Guilty Plea Form, *State v. Jeffrey C. Guseman,* ID No. 1905004486 (Del. Super. Ct. Nov. 4, 2019) (D.I. 13).

unsuspended imprisonment.[2]   These offenses arose from a motor vehicle collision that killed a husband and wife and seriously injured their adult son.

(3)     Around 10:30 p.m. on Saturday night, August 18, 2018, Mr. Guseman was driving his F150 pickup southbound on Salem Church Road. Prashanth Raju was going northbound on the same road in his Toyota Camry. In the rear seat of Mr. Raju's car, were his parents—Mr. Raju Chanappa and Mrs. Lakshmidezi Hanumanthappa.   Mr. Guseman was behind another uninvolved vehicle that he, for no reason at all, decided to pass in a no-passing zone.

To do so, Mr. Guseman crossed over the solid double yellow line and drove the wrong way in the single northbound lane at a speed of 70 MPH. The speed limit there for one travelling in his assigned lane and in the correct direction of travel is only 35 MPH.  Mr. Gusemen crashed into the victims head-on causing Mr. Raju's Camry to overturn.  When the lead investigator arrived, Mr. Raju was still pinned in the driver's seat of his overturned car, his father was being ambulanced to the hospital, and EMTs were performing CPR on his mother.

---

[2]   *Id.*

Mr. Chanappa was pronounced dead immediately upon his arrival at the emergency room. His wife, Mrs. Hanumanthappa, lingered for several days and finally succumbed to her injuries on August 23rd. Their son, Mr. Raju, suffered fractures and multiple blunt force trauma injuries to all of his upper and lower extremities.

When Mr. Guseman was taken to the hospital for treatment, he admitted that he had had a couple of beers earlier in the day—and two of his beer cans were found at the scene—but Mr. Guseman's blood test registered no blood alcohol or illicit drug content.

After the complete accident and forensic investigation, Mr. Guseman was indicted for Mr. Chanappa and Mrs. Hanumanthappa's deaths and Mr. Raju's assault.[3] Before this, Mr. Guseman had a pretty minor criminal history. But, before this, he had a long (twenty-three-year) and awful driving record reflective of just the type of behavior he exhibited the night of August 18th. That history of driving convictions included, *inter alia*: no less than four separate incidents of following too closely (accident-related); no less than two separate incidents of careless driving (accident-related); three separate

---

[3] Indictment and Rule 9 Warrant, *State v. Jeffrey C. Guseman,* ID No. 1905004486 (Del. Super. Ct. May 13, 2019) (D.I. 1) (charging Mr. Guseman with two counts of manslaughter, one count assault in the first degree, and three related traffic charges).

inattentive driving violations (two accident-related, one not); two distinct improper passing convictions; and five different speeding offenses.

(4) As mentioned earlier, Mr. Guseman entered his guilty plea in November 2019. His sentencing occurred on July 10, 2020, after a comprehensive presentence investigative (PSI) report was prepared. In addition to those materials compiled in the PSI report, Mr. Guseman's counsel submitted, and the Court considered, a forensic psychiatric report authored by forensic psychiatrist Neil S. Kaye, MD, and a mitigation report prepared by mitigation specialist Teresa Sipagan. All of these materials that spoke to the applicable aggravating and mitigating circumstances present here were fully examined by the Court before imposing Mr. Guseman's sentence.

(5) Mr. Guseman was sentenced: (a) for Manslaughter (N19-05-0415W-Victim Raju Channappa)—25 years at Level V suspended after serving five years at Level V for 20 years at Level IV (DOC Discretion), suspended after serving six months at Level IV, for two years at Level III (TASC); (b) for Manslaughter (N19-05-0416W-Victim Lakshmidevi Hanumanthappa)—25 years at Level V suspended after serving five years at Level V with no probation to follow; and (c) for Assault Second Degree (N19-

05-0417W-Victim Prashanth Raju)—Eight years at Level V suspended after serving two years and six months at Level V with no probation to follow [4]

**(6)** His sentencing order provides that Mr. Guseman's sentence is effective November 4, 2019, that the Level V terms for the manslaughter counts are to be served concurrently while the Level V term for the felony assault counts is to be served consecutive thereto, and that he is to be held at Level V until space is available for his Level IV placement.[5]

**(7)** In short, Mr. Guseman's seven-and-a-half-year period of unsuspended imprisonment is comprised of the two concurrent two-year minimum terms of incarceration that must be imposed under Delaware's manslaughter statute and that cannot be suspended[6] and the additional five and one-half years that the Court imposed as an exercise of its own sentencing judgment.

---

[4] Sentence Order, *State v. Jeffrey C. Guseman,* ID No. 1905004486 (Del. Super. Ct. Nov. 4, 2019) (D.I. 13). There are numerous financial, no-contact, evaluation and treatment terms and conditions included as part of Mr. Guseman's sentence. But as those are not challenged in his motion, they are not fully recounted here.

[5] *Id.*

[6] *See* DEL. CODE ANN. tit. 11, §§ 632 and 4205(b)(2) (2018) (manslaughter is a class B felony with a minimum term of two years at Level V); *id.* at § 4205(d) ("Where a minimum, mandatory, mandatory minimum or minimum mandatory sentence is required by . . . this section, such sentence shall not be subject to suspension by the court.")

**(8)** Mr. Guseman filed no direct appeal of his convictions or sentences. Instead, he docketed the present motion under Superior Court Criminal Rule 35(b) requesting substantial reduction of his cumulative prison term.[7] Mr. Guseman asks that the Court reduce his sentence to a total of five years imprisonment suspended after completion of a Level V substance abuse/mental health program followed by continued treatment at Level IV and while on community supervision.[8]

**(9)** The Court may consider Mr. Guseman's motion "without presentation, hearing or argument."[9] The Court decide his motion on the papers filed and the complete sentencing record in this case.

**(10)** When considering motions for sentence reduction, "this Court addresses any applicable procedural bars before turning to the merits."[10] As

---

[7] Super. Ct. Crim. R. 35(b) (providing that, under certain conditions, the court may reduce a sentence of imprisonment on an inmate's motion); *Jones v. State*, 2003 WL 21210348, at *1 (Del. May 22, 2003) ("There is no separate procedure, other than that which is provided under Superior Court Criminal Rule 35, to reduce or modify a sentence.").

[8] D.I. 21 (Mr. Guseman specifically requests assignment to the KEY/CREST treatment continuum. But that program has been phased out by the Department of Correction and replaced with another Level V mental health/substance abuse treatment program.).

[9] Super. Ct. Crim. R. 35(b).

[10] *State v. Redden*, 111 A.3d 602, 6Lveel 06 (Del. Super. Ct. 2015).

Mr. Guseman's motion is his first and is timely filed, the Court finds there are no procedural bars to the consideration of his request under Rule 35(b).

**(11)** The purpose of Superior Court Criminal Rule 35(b) historically has been to provide a reasonable period for the Court to consider alteration of its sentencing judgments.[11] When an inmate files his motion for reduction of his incarcerative term within 90 days of his sentencing, the Court has broad discretion to decide whether to alter its judgment.[12] "The reason for such a rule is to give a sentencing judge a second chance to consider whether the initial sentence is appropriate."[13] But, no doubt, as movant, Mr. Guseman must shoulder the burden of establishing just cause for reduction or modification of his otherwise legal sentence.[14]

---

[11] *Johnson v. State*, 234 A.2d 447, 448 (Del. 1967) (per curiam).

[12] *Hewett v. State*, 2014 WL 5020251, at *1 (Del. Oct. 7, 2014) ("When, as here, a motion for reduction of sentence is filed within ninety days of sentencing, the Superior Court has broad discretion to decide whether to alter its judgment."); *State v. Williams*, 2015 WL 757551, at *2 (Del. Super. Ct. Feb. 18, 2015) ("Where a motion for reduction of sentence is filed within 90 days of sentencing, the Court has broad discretion to decide if it should alter its judgment.").

[13] *State v. Remedio*, 108 A.3d 326, 331 (Del. Super. Ct. 2014) (internal citations and quotations omitted) (observing that such a request is essentially a plea for leniency: an appeal to the sentencing court to reconsider and show mercy).

[14] *See State v. Joseph,* 2018 WL 1895697, at *1 (Del. Super. Ct. Apr. 11, 2018) ("The burden is upon the movant to establish cause to modify a lawfully imposed sentence.").

**(12)** The Court has examined Mr. Guseman's claim—*i.e.*, his request that the Court reconsider and decide if, on further reflection, its sentence now seems unduly harsh—on the merits. Under every iteration of Delaware's criminal rules governing motions to reduce sentences, such entreaties are addressed to the sound discretion of this Court.[15]

**(13)** Mr. Guseman cites several reasons that the Court should reduce his sentence to no more than that that needed to complete a substance abuse program: (a) his physical and mental health issues that he believes led to his behavior and that he is willing to address through treatment; (b) his completion of one year of his sentence as "an exemplary prisoner"; (c) his training and history of gainful employment as a plumber; (d) his family support and its need for his financial and other support; and (e) his remorse.[16]

**(14)** At bottom in this sentence reduction motion, Mr. Guseman asks that the Court reweigh mitigating circumstances he believes were present at the time of his sentencing and then reduce his term of imprisonment. "A request for leniency and reexamination of the sentencing factors is precisely the stuff of which a proper and *timely* Rule 35(b) motion is made."[17]

---

[15] *Hewett*, 2014 WL 5020251, at *1. *See also Shy v. State*, 246 A.2d 926 (Del. 1968); *Lewis v. State*, 1997 WL 123585, at *1 (Del. Mar. 5, 1997).

[16] D. I. 21 and 25.

[17] *Remedio*, 108 A.3d at 331-32 (emphasis in original).

**(15)** The Court may exercise great discretion when entertaining a timely Rule 35(b) application, but it has no authority to reduce or suspend the mandatory portion of any substantive statutory minimum sentence.[18] Again, Mr. Guseman must serve no less than the concurrent minimum two-year terms of imprisonment for his manslaughter convictions. And again, that is a minimum term of incarceration that is required and cannot be suspended or reduced.[19] Mr. Guseman's requested reduction would violate that two-year minimum required by 11 *Del. C.* §§ 632, 4205(b)(2) and 4205(d). That the Court cannot do.[20] So the Court turns to the remaining five-and-a-half-year period of incarceration that it imposed in its own sentencing discretion.

**(16)** By the time of sentencing, the Court had been well-informed of Mr. Guseman's history of mental health issues. The Court had familiarized

---

[18] *State v. Sturgis*, 947 A.2d 1087, 1092 (Del. 2008) ("Superior Court Rule of Criminal Procedure 35(b) provides no authority for a reduction or suspension of the mandatory portion of a *substantive* statutory minimum sentence.") (emphasis in original).

[19] *See* n.6, *supra.*

[20] *See Williams*, 2015 WL 757551, at *2 (Addressing a request to reduce a two-year minimum term imposed for a class B felony and holding "while the Court has wide discretion to reduce a sentence upon a timely Rule 35 application, the Court has no authority to reduce or suspend the mandatory portion of any substantive statutory minimum sentence."); *State v. McFarland*, 2020 WL 3564615, at *2 (Del. Super. Ct. July 1, 2020) ("[T]he Court has no authority to reduce or suspend the mandatory portion of any substantive minimum sentence."); *State v. Puligini*, 2020 WL 4036218, at *3 (Del. Super. Ct. July 15, 2020) (same).

itself with Mr. Guseman's full social and work history. The Court has never doubted the sincerity of Mr. Guseman's remorse for decimating the Channappa-Hanumanthappa family. And the Court commends Mr. Guseman for the strides he has made during the Level V term of this sentence, as well as, his expressed desire to seek further treatment after his release. But these mitigators just don't outweigh the aggravating circumstances present in this case. Those aggravators include the specifics of Mr. Guseman's crime, its dire permanent effect, and the history of Mr. Guseman's repetitive driving conduct over more than two decades—it was predictable that at some point Mr. Guseman was going to take a life on the road. Unfortunately, he took two.

**(17)** That said, the Court has fully reviewed Mr. Guseman's application, the record of his case, his prior criminal and driving history, and all sentencing information available. The Court carefully weighed the applicable aggravators and mitigators before imposing its sentence. The Court finds that when those and all other sentencing factors in his case are reconsidered, Mr. Guseman's statements of regret may be commendable, his desire to engage treatment admirable, and his work history impressive, but they do not warrant a sentence reduction here. Instead, after a thorough review of the merits of Mr. Guseman's request, the Court finds its original

sentencing judgment is appropriate for the reasons stated at the time it was rendered.

(18) Accordingly, the Court will exercise its discretion under Rule 35(b)[21] and **DENY** Mr. Guseman's request to reduce the seven and one-half-year term of imprisonment he must serve.

**SO ORDERED this 10th day of March, 2021.**

**Paul R. Wallace, Judge**

Original to Prothonotary

cc:   Mr. Jeffrey C. Guseman, *pro se*
      Barzilai K. Axelrod, Deputy Attorney General
      Andrew J. Witherell, Esquire
      Investigative Services Office

---

[21] *Hewett*, 2014 WL 5020251, at *1; *Rondon v. State*, 2008 WL 187964, at *1 (Del. Jan. 15, 2008) ("The merit of a sentence modification under Rule 35(b) is directed to the sound discretion of the Superior Court.").